*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RICHARD WAYNE WOOLMAN,

Defendant-Appellant.

UNPUBLISHED
July 24, 2026
9:32 AM

No. 374806
St. Clair Circuit Court
LC No. 23-001958-FC

Before: MARIANI, P.J., and O'BRIEN and WALLACE, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of three counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(b)(*i*) (sexual penetration of victim between 13 and 16 years old and member of same household as defendant); two counts of second-degree criminal sexual conduct, MCL 750.520c(1)(b)(*i*) (sexual contact with victim between 13 and 16 years old and member of same household as defendant); and one count of attempted CSC-I, MCL 750.92; MCL 750.520b(1)(b)(*i*). The trial court sentenced defendant to concurrent terms of imprisonment of 20 to 30 years for each CSC-I conviction, 10 to 15 years for each CSC-II conviction, and 40 to 60 months for the attempted CSC-I conviction. We affirm.

## I. BACKGROUND

Defendant's convictions arose from allegations that he sexually abused his then-fiancée's daughter (the victim) from August 19, 2022, to August 26, 2023, when the victim was between 14 and 15 years old. At the time of the abuse, defendant had been in a relationship with the victim's mother for approximately seven years and had been living with the victim and her mother for at least three. At trial, the victim testified that once she turned 14 years old, defendant began sneaking into her room at night and touching her breasts and vagina, but the touching eventually escalated to vaginal penetration. According to the victim, defendant sexually touched or penetrated her nearly every day for over a year, and the encounters almost always occurred the same way: defendant would come into her room shortly before bed while her mother was working or sleeping

-1-

and then touch her breasts and vagina, vaginally penetrate her, or both.[1] Defendant's son, who was living with defendant, the victim, and the victim's mother at the time of defendant's arrest, testified that he never directly saw defendant act inappropriately toward the victim but that he frequently saw defendant go into the victim's bedroom just before bedtime, close the door, and remain in there for 30 to 60 minutes.

During her testimony, the victim provided a detailed description of a touching incident and stated that that type of incident happened in the same manner and under the same circumstances "[m]ore than one time" during the year-long period that defendant abused her. The victim also provided a detailed description of at least three incidents involving penetration and explained that that type of incident happened in the same manner and under the same circumstances "all the time" and nearly "every day" during the period of abuse. The victim testified that whenever the abuse involved penetration, defendant would always end the assault by ejaculating either onto the floor next to her bed or on the side of her bed frame. The victim further testified that if her mother was home while the abuse was occurring, defendant would prop up his phone on an end table near her bed so that he could monitor the home's surveillance cameras to ensure that nobody was nearby.[2]

Defendant's sexual abuse of the victim was first discovered after the victim's mother walked in on defendant attempting to sexually penetrate the victim.[3] According to the victim's mother, she was at home taking a bath when she heard "a loud bang." This startled her, so she checked the home's camera to see what happened, and she saw defendant in the living room nodding his head toward the victim's room; defendant and the victim then both walked into the victim's room, and defendant shut the door behind them. Concerned, the victim's mother got out of the bath and went to the victim's room, and upon opening the bedroom door, she saw defendant sitting on the victim's bed with the victim sitting on his lap facing away from him and with him holding onto the victim's hips. Defendant and the victim both had their pants pulled down enough so that their genitals were fully exposed, and the victim's mother could see that defendant had an erection. Defendant then pushed the victim off his lap, and the victim's mother pulled her out of

---

[1] The victim also provided a detailed description of one incident in which defendant vaginally penetrated her on a desk in his makeshift office in the home's garage during the afternoon; the assault ended when the victim's mother returned home unexpectedly and the home's alarm system notified defendant of her presence, which gave him sufficient time to put his clothes back on and hide the victim.

[2] During her testimony, the victim's mother explained that, at defendant's direction, she and defendant had installed a "live feed" video camera in the living room in approximately August 2022 so that they could monitor the common areas of the home and the doorways to each of the children's bedrooms. Both the victim's mother and defendant had access to the camera's live video transmission via an application on their cell phones. According to the victim's mother, she was typically unable to see the live video while she was at work and defendant was at home because defendant would, by his own admission to her, unplug the camera during that time.

[3] The victim explained that she never disclosed the sexual abuse while it was occurring because defendant had threatened that she would "be taken away from [her] mom" and that she and her "mom would be homeless" if she told anyone.

the room and began hitting defendant. After some back and forth with defendant, the victim's mother eventually called the police to report the incident, and defendant was arrested that evening.

In addition to testimony from the victim, the victim's mother, and defendant's son, the prosecution's evidence at trial included photographs of evidence collected from the home and from the victim's person; expert testimony regarding the physical evidence collected and the victim's forensic interview shortly after defendant's arrest; DNA test results from samples collected from seminal fluid stains found on the victim's bed frame and floor, which indicated that there was "very strong support" that defendant and the victim were contributors; and testimony from the individuals involved in the investigation. The prosecution also introduced testimony from the sexual assault nurse examiner (SANE) who medically examined the victim immediately after defendant's arrest, as well as a copy of the SANE's report that she had completed while examining the victim.

The defense introduced testimony from defendant's daughter, who testified that she occasionally stayed in the home and never noticed anything unusual going on between defendant and the victim during those times. The defense also introduced testimony from an expert in forensic biology, who testified that she was unable to recover any male DNA from the swabbed samples collected from the victim's body during the victim's SANE examination. Additionally, defendant testified on his own behalf, generally denying all of the victim's allegations and claiming that on the evening that the victim's mother walked in on him with the victim, he and the victim had simply been "wrestling" and that, in what was "a freak accident," his penis slipped out of his pajama pants.

Defendant was convicted and sentenced as described. This appeal followed.

## II. EVIDENTIARY CHALLENGES

Defendant raises two evidentiary challenges on appeal: the admission of statements the victim made during her medical examination with the SANE, and the admission of the victim's testimony regarding the full scope of defendant's acts of sexual abuse. In general, "[a] trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion," with "[p]reliminary questions of law, including whether a rule of evidence precludes the admission of evidence, . . . reviewed de novo." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). Because, however, defendant failed to object to this evidence at trial on the same grounds raised on appeal, the issues are unpreserved and thus reviewed for plain error affecting substantial rights. See *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). To obtain appellate relief under this standard, the defendant must show: (1) an error occurred, (2) the error was clear or obvious, and (3) the error affected substantial rights. *People v Jones*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 362854); slip op at 3. To satisfy the third element, the defendant must show "that the error affected the outcome of the [lower court] proceedings." *Id*. at ___; slip op at 3 (quotation marks and citation omitted). And even when these three requirements are met, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *People v Allen*, 507 Mich 597, 614; 968 NW2d 532 (2021) (quotation marks and citations omitted).

## A. SANE REPORT AND CORRESPONDING TESTIMONY

Defendant first argues that the trial court reversibly erred by admitting as evidence certain statements made by the victim to the SANE during her medical examination. Specifically, defendant challenges the admission of the portions of the SANE's report and corresponding trial testimony regarding (1) the victim's allegations of ongoing sexual abuse by defendant; (2) the victim's description of how defendant would ejaculate after each assault; and (3) the victim's statements that defendant threatened her to keep her from disclosing the abuse. According to defendant, the statements did not satisfy the requirements of MRE 803(4) (statement made for purposes of medical treatment or diagnosis in connection with treatment) and thus were inadmissible hearsay, and they only served to impermissibly bolster the victim's trial testimony.

"In general, hearsay—an out-of-court statement offered to prove the truth of the matter asserted—may not be admitted into evidence." *People v Green*, 313 Mich App 526, 531; 884 NW2d 838 (2015); see also MRE 801(c); MRE 802. MRE 803(4), however, provides an exception to this rule, allowing the admission of hearsay "statements made for the purpose of obtaining medical treatment." *Jones*, ___ Mich App at ___; slip op at 4, 6. To be admissible under this exception, the statements (1) must be "made for—and [be] reasonably necessary to—medical treatment or diagnosis in connection with treatment," and (2) must "describe[] medical history, past or present symptoms or sensations, their inception, or their general cause." MRE 803(4). "The rationale for MRE 803(4) is the existence of (1) the self-interested motivation to speak the truth to treating physicians in order to receive proper medical care, and (2) the reasonable necessity of the statement to the diagnosis and treatment of the patient." *People v Shaw*, 315 Mich App 668, 674; 892 NW2d 15 (2016) (quotation marks and citation omitted).

Correspondingly, our caselaw has generally recognized that, to fall within the scope of this exception, the medical examination during which the statements were made must have occurred for the primary purpose of medical diagnosis and treatment rather than investigation, and within a reasonable amount of time of the last alleged instance of sexual abuse. See *People v Meeboer (After Remand)*, 439 Mich 310, 324-325, 333-334; 484 NW2d 621 (1992); *People v Duenaz*, 306 Mich App 85, 95-97; 854 NW2d 531 (2014); cf. *Shaw*, 315 Mich App at 674-676 (concluding that the victim's hearsay statements were not admissible under MRE 803(4) because they were made during an examination that occurred seven years after the last alleged instance of sexual abuse and for the purpose of investigation rather than diagnosis and treatment). The declarant, however, need not have "sustained any immediately apparent physical injury" to meet MRE 803(4)'s requirements. *People v Mahone*, 294 Mich App 208, 215; 816 NW2d 436 (2011). "Particularly in cases of sexual assault, in which the injuries might be latent, such as contracting sexually transmitted diseases or psychological in nature, and thus not necessarily physically manifested at all, a victim's complete history and a recitation of the totality of the circumstances of the assault are properly considered to be statements made for medical treatment." *Id*. Our caselaw has also recognized that a child's identification of their abuser during a medical examination can be reasonably necessary to obtaining proper medical treatment and to ensuring the child's health, including their safety upon their return home; under such circumstances, and if the identification is otherwise sufficiently trustworthy, it may be admissible under MRE 803(4). *Jones*, ___ Mich App at ___; slip op at 6-7, citing *Meeboer*, 439 Mich at 324-325, and *Duenaz*, 306 Mich App at 96-97.

-4-

Under this precedent, defendant has not shown reversible error in the trial court's decision to admit the victim's statements discussed in the SANE's report and the corresponding trial testimony. As the SANE testified—and as defendant has not meaningfully attempted to rebut—all of the victim's statements challenged by defendant were reasonably necessary to determining whether the victim should be evaluated and treated for potential sexually transmitted diseases and pregnancy, as well as for any trauma and psychological injuries not physically manifested. See *Meeboer*, 439 Mich at 328-330; *Duenaz*, 306 Mich App at 96-97; *Mahone*, 294 Mich App at 215. Those injuries, once discovered, may have required referrals for other necessary medical treatment, such as additional testing or psychological counseling. See *Meeboer*, 439 Mich at 329-330; *Duenaz*, 306 Mich App at 96-97. The challenged statements were also reasonably necessary to determine whether the victim would be returned to a safe, rather than an abusive, home following the medical examination, and would "have the opportunity to heal once released from the hospital." *Meeboer*, 439 Mich at 329-330; see also *Duenaz*, 306 Mich App at 96-97. In addition, the examination during which the victim made the challenged statements occurred on the evening of defendant's arrest, which immediately followed the victim's mother walking in on defendant attempting to sexually penetrate the victim, and was done while the victim "was still suffering from emotional pain and distress from the incident." *Duenaz*, 306 Mich App at 96. And although the prosecution and police initiated the medical examination following defendant's arrest and it may have been performed at least in part to investigate an alleged sexual assault, this factor alone is not dispositive. See *id*. Nor does defendant identify, or the record reflect, any other basis to question the trustworthiness of the statements the victim made during the examination.

Furthermore, even if any of the challenged statements were erroneously admitted, defendant has not demonstrated that reversal is warranted. See *Allen*, 507 Mich at 614. The victim testified at length and in great detail about the near-daily sexual abuse she experienced for over a year at the hands of defendant. She also testified about why she did not disclose the abuse, which, according to her, was due to defendant's threats that she would be taken away from her mother and that her mother would get in trouble for the abuse.

Defendant stresses that the challenged statements were prejudicial because they bolstered this testimony and, with it, the victim's credibility. But even if so, we fail to see how such bolstering may have affected the outcome of his trial in light of the ample other evidence corroborating the victim's testimony and demonstrating his guilt. The victim's mother testified to walking in on defendant attempting to sexually penetrate the victim in her bedroom. Defendant's son testified that he had, on many occasions, observed defendant going into the victim's bedroom just before bedtime, closing the door behind him, and remaining in there for 30 to 60 minutes. The SANE testified that she observed a small red abrasion on the victim's labia minora, which was consistent with a wound caused by "rubbing friction" from "an object, a finger, [or] a penis[.]" The victim testified that defendant, after each assault, would ejaculate either onto the floor next to her bed or on the side of her bed frame, and personnel involved in the investigation testified that they collected DNA samples from a total of more than 55 separate seminal fluid stains from a four- to five-foot portion of the victim's floor near her bed and from the side of her bed frame. Testing of two of those samples (one from the floor and one from the bed frame) revealed that the seminal fluid stains did not contain sperm, which is commonly seen in individuals who have had a vasectomy, and defendant testified that he had had a vasectomy several years prior to the assaults. The test results also revealed that there was "very strong support" for the conclusion that both the victim and defendant, rather than any other individuals, were the DNA contributors of the samples.

Defendant has failed to show how, given all of the evidence properly presented to the jury, any error in the admission of the challenged statements from the SANE report and corresponding testimony affected his substantial rights and warrants reversal. See *Allen*, 507 Mich at 614; *Jones*, ___ Mich App at ___; slip op at 3.[4]

## B. OTHER-ACTS EVIDENCE

Defendant next argues that the prosecution was erroneously permitted to admit other-acts evidence at trial without first notifying him under MCL 768.27a of its intent to do so.[5] Specifically, defendant argues that he was only charged with seven CSC offenses, but the victim was permitted to testify that he sexually abused her on a near-daily basis from the time of her fourteenth birthday until the date of his arrest a little over a year later, and all of those other instances of CSC constituted other-acts evidence requiring pretrial notice of the prosecution's intent to introduce it. Here too, defendant has failed to show reversible error.

MCL 768.27a(1) provides, in relevant part, that

> [i]f the prosecuting attorney intends to offer evidence [that the defendant committed another listed offense against a minor] under this section, the prosecuting attorney

---

[4] To the extent that defendant raises an unpreserved prosecutorial-misconduct claim based on the admission of this same evidence, we conclude that it fails for the same fundamental reasons. See *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010); *People v Dobek*, 274 Mich App 58, 70-71; 732 NW2d 546 (2007).

Also unavailing is defendant's corresponding ineffective-assistance claim as to this evidence. As discussed, defendant has not shown that the trial court erred by admitting the evidence, and counsel is not constitutionally ineffective for failing to raise a futile or meritless objection. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). And, as discussed, the other evidence presented at trial amply supported defendant's convictions. Defendant has not demonstrated how, in light of this other evidence, it was reasonably probable that any alleged deficiency in counsel's performance with respect to the SANE-related evidence was outcome determinative. See *Shaw*, 315 Mich App at 672.

[5] Defendant argues that the prosecution failed to provide proper pretrial notice under either MCL 768.27a or MRE 404(b)(3). But it is clear that MCL 768.27a provides the relevant basis for defendant's challenge, given the nature of the conduct at issue. See MCL 768.27a(1) (providing for admission of "evidence that the defendant committed another listed offense against a minor . . . for its bearing on any matter to which it is relevant") and (2)(a) (defining a " '[l]isted offense' " as that term is "defined in . . . MCL 28.722"); MCL 28.722(i) (defining " '[l]isted offense' " as "a tier I, tier II, or tier III offense"), (t)(*x*) (defining " '[t]ier II offense' " to include criminal sexual contact (CSC-II) with a victim between 13 and 18 years old under MCL 750.520c), and (v)(*iv*) and (*viii*) (defining " '[t]ier III offense' " to include criminal sexual penetration (CSC-I) of a minor victim under MCL 750.520b and attempt of the same); see also *People v Watkins*, 491 Mich 450, 468-477; 818 NW2d 296 (2012) (concluding that "MCL 768.27a and MRE 404(b) irreconcilably conflict" and holding that "in cases in which [MCL 768.27a] applies, it supersedes MRE 404(b)").

shall disclose the evidence to the defendant at least 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered.

Assuming the evidence of the conduct at issue required pretrial disclosure under MCL 768.27a(1),[6] defendant has not explained why that disclosure requirement was not satisfied here. Both the felony complaint and the felony information, which were filed within a few weeks of defendant's arrest—i.e., more than a year before defendant's jury trial—informed defendant that the charged offenses were based on the victim's allegations that he had sexually abused her between August 19, 2022, and August 26, 2023. A search-warrant affidavit to collect defendant's DNA filed approximately two weeks after defendant's arrest also clearly stated that the criminal investigation and the corresponding charges were based on the victim's allegations of near-daily sexual abuse by defendant from the time of the victim's fourteenth birthday until the date of defendant's arrest. These documents fell within the scope of the demand for discovery defendant made four days after his arrest, and defendant does not claim he did not receive them well before his scheduled trial date. Nor, more generally, does he claim that he did not appreciate the relevance of the conduct at issue to the charges against him, identify exactly what evidence regarding the conduct was not disclosed to him at least 15 days prior to trial, or explain why the evidence made available to him prior to trial was insufficient to meet the statutory disclosure requirement.

Furthermore, defendant has not explained how any error in the prosecution's compliance with MCL 768.27a(1)'s disclosure requirement may have affected his substantial rights. See *Allen*, 507 Mich at 614; *Jones*, ___ Mich App at ___; slip op at 3. Again, defendant does not claim, and the record does not show, that defendant lacked awareness of the evidence at issue or appreciation of its connection to the case against him. And while defendant baldly asserts that the evidence "was blatantly improper," he offers—and we see—no basis to conclude that it was somehow substantively inadmissible under MCL 768.27a(1). Nor does he explain how he would have proceeded any differently with earlier or more notice of its intended use at trial, or how any error as to disclosure may have made a difference in the outcome of his trial in light of the above-discussed, overwhelming evidence of his guilt. See, e.g., *People v Gaines*, 306 Mich App 289, 302; 856 NW2d 222 (2014) (explaining that "any error in the prosecutor's disclosure [under MCL 768.27a(1)] was harmless" given the defendant's undisputed awareness of the evidence at issue), citing MCR 2.613(A); cf. *People v Jackson*, 498 Mich 246, 276-280; 869 NW2d 253 (2015)

---

[6] Defendant does not address why it is correct to consider the conduct at issue "*another* listed offense" under MCL 768.27a(1) (emphasis added), given that it fell within the scope of the charged conduct. Both the felony complaint and the felony information listed the charged conduct as having occurred between August 19, 2022 (the victim's fourteenth birthday) and August 26, 2023 (the date of defendant's arrest). The record also demonstrates that the charged offenses and the specified date range were based on the victim's allegations that defendant had sexually abused her nearly every day during that time period. As explained above, however, we see no basis for relief even if compliance with MCL 768.27a(1)'s disclosure provision was required.

(analyzing harmlessness of error in noncompliance with MRE 404(b)'s notice requirement). We therefore see no grounds for relief as to this issue.[7]

### III. UNANIMITY INSTRUCTION

Finally, defendant argues that he was deprived of his constitutional right to a unanimous jury verdict because the trial court failed to instruct the jury that it must unanimously agree on the specific facts supporting each verdict. Because defendant failed to request a specific unanimity instruction or challenge the trial court's failure to give such an instruction, this issue is unpreserved and thus reviewed for plain error affecting substantial rights. See *People v Waclawski*, 286 Mich App 634, 678-679; 780 NW2d 321 (2009).

"A defendant has the right to a unanimous verdict and it is the duty of the trial court to properly instruct the jury on this unanimity requirement." *Id*. at 679 (quotation marks and citation omitted). A "specific unanimity instruction is not required in *all* cases in which more than one act is presented as evidence of the actus reus of a single criminal offense"; rather, such an instruction is required only when alternative acts allegedly committed by the defendant are "materially distinct," or "there is reason to believe the jurors might be confused or disagree about the factual basis of [the] defendant's guilt." *People v Cooks*, 446 Mich 503, 512, 524; 521 NW2d 275 (1994). Accordingly, "where materially identical evidence is presented with respect to each act, and there is no juror confusion, a general unanimity instruction" is sufficient. *Id*. at 512-513.

Here, the trial court gave a general unanimity instruction, and defendant does not provide any legal or factual basis to conclude that this instruction was insufficient in this case. Defendant does not explain how any of the acts in question were materially distinct, or point to anything in the record demonstrating juror confusion. See *id*. at 512-513, 524. Nor is any material distinction or juror confusion apparent from the record. As in *Cooks*, "the evidence offered in this case to support each of the alleged acts . . . was materially identical"—the victim described instances of sexual contact and sexual penetration perpetrated by defendant while the two were alone in her bedroom and explained that defendant repeatedly abused her in the same manner from the time of her fourteenth birthday until the time that her mother walked in on defendant attempting to sexually penetrate her over a year later. *Id*. at 528-529. And also as in *Cooks*, the jurors received a general unanimity instruction and never expressed confusion about their obligation to reach a unanimous agreement for each charged offense. See *id*. at 529. Accordingly, defendant has not shown that he is entitled to relief on this issue. See *id*.; *Jones*, ___ Mich App at ___; slip op at 3.

Defendant also argues that his constitutional right to due process was violated because the trial court, by failing to provide a specific unanimity instruction, "effectively amended the information to include hundreds of acts that were not charged and which [defendant] never had notice that he would have to defend against." The record does not support this claim. As discussed

---

[7] Defendant's corresponding ineffective-assistance claim as to this issue is equally unavailing; given the analysis above, defendant has not shown how counsel performed deficiently by not seeking to object to the evidence in question for lack of pretrial notice, nor has he shown how it was reasonably probable that, had counsel done so, the outcome of his trial would have been different. See *Head*, 323 Mich App at 539; *Shaw*, 315 Mich App at 672.

above, the felony information listed the date range for the charged offenses as August 19, 2022, to August 26, 2023, and it was known since the inception of this case that the charged offenses were based on the victim's allegations that defendant abused her on a near-daily basis during that time frame. The trial court's jury instructions were consistent with this, and defendant has failed to show any reversible error on this basis, either. See *Waclawski*, 286 Mich App at 678-679.

Affirmed.

/s/ Philip P. Mariani
/s/ Colleen A. O'Brien
/s/ Randy J. Wallace